426 So.2d 224 (1982)
John WALLACE, Plaintiff-Appellee,
v.
PAN AMERICAN FIRE & CASUALTY CO., et al., Defendants-Appellants.
No. 82-436.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Writs Denied April 5, 1983.
*225 Stafford, Stewart & Potter, Grove Stafford, Jr., Alexandria, for plaintiffs-appellants-appellees.
Gist, Methvin, Hughes & Munsterman, H.B. Gist, Jr., Alexandria, for plaintiffs-appellees-appellants.
Bolen & Erwin, Ltd., James A. Bolen, Jr., Alexandria, for defendants-appellees.
Before GUIDRY, CUTRER and STOKER, JJ.
CUTRER, Judge.
This case was consolidated for trial with the suit of McMullen v. Pan American Fire & Casualty Company, Number 82-435 on the docket of this court. These suits are consolidated on appeal and, since the law and relevant facts are common to both, our opinion in this case is equally applicable. However, we render a separate judgment for such consolidated case of McMullen v. Pan American Fire & Casualty Company, 426 So.2d 229 (La.App. 3rd Cir.1982).
These appeals are the third set of appeals arising out of this protracted litigation which arose out of a gas explosion in the Evans High School in Vernon Parish. The original plaintiffs were John Wallace and H.F. McMullen who were severely injured in the explosion. After trial on the merits, judgment was rendered in favor of the plaintiffs and against several defendants. Upon appeal, this court affirmed the trial court judgment with respect to the issues of liability and damages but the cases were remanded to the trial court for a determination of several third party demands which had not been disposed of in the original judgment. Wallace v. Pan American Fire & Casualty Company, 352 So.2d 1048 (La.App. 3rd Cir.1977) and McMullen v. Pan American Fire & Casualty Company, 352 So.2d 1058 (La.App. 3rd Cir.1977), writs ref'd, (both cases), 354 So.2d 209 (La.1978).
The second set of appeals, Wallace v. Pan American Fire & Casualty Company, 386 So.2d 158 (La.App. 3rd Cir.1980) and McMullen v. Pan American Fire & Casualty Company, 386 So.2d 164 (La.App.3rd Cir. 1980), were concerned with only a portion of the third party demands for contribution or indemnity among some of the several defendants. This court affirmed the trial court's dismissal of a portion of such third party demands and again remanded to the trial court for a consideration of the remainder of the third party demands for indemnity.
This third set of appeals concerns the trial court's dismissal of the remaining third party demands seeking indemnity.
The third party demands at issue on this appeal are as follows:
(1) Jessee Scoggins, d/b/a Star Butane Company (Star Butane) and its insurer, Pan American Fire & Casualty Company, against H.L. Hunt (Hunt)[1] and its insurer, Fidelity & Casualty Company of New York; and
(2) Wanda Petroleum Company (Wanda) and its insurer, Insurance Company of North America against Hunt.
The third party demands by Wanda and Scoggins seek indemnity from Hunt. The trial court rendered judgment dismissing the third party demands. Wanda and Scoggins appealed. We affirm.
This appeal presents the following issues:
(1) Whether Wanda and Scoggins are entitled to indemnity from Hunt on the *226 ground that Hunt was "actively" negligent while any negligence of Wanda and Scoggins was only "passive;" or,
(2) Whether Wanda and/or Scoggins are entitled to indemnity under the theory of redhibition; or
(3) Whether Wanda would be entitled to indemnity under its contract with Hunt.

ACTIVE/PASSIVE NEGLIGENCE
Wanda (wholesale distributor of the gas) and Scoggins (retail distributor) both contend that since Hunt was the manufacturer of the gas, it had the duty to properly odorize same. They argue that Hunt's failure to properly odorize the gas in question was "active" negligence while their negligence was only "passive" as they were merely the wholesale and retail distributors respectively. The trial judge, in his opinion on the trial of the case, did not rule on the active/passive issue as he was concerned with the negligence of the defendants toward the plaintiffs.
On the first appeal of the case, however, this court agreed with the trial court's findings which have the effect of disposing of this active/passive negligence.
In the first appeal of Wallace v. Pan American Fire & Casualty Company, 352 So.2d 1048 (La.App. 3rd Cir.1977), this court stated as follows:
"The trial judge next determined that the LPG supplied to the Evans School was either unodorized or under-odorized determining that under the Louisiana LPG Commission regulations, a duty is imposed upon all manufacturers and distributors of LPG to use proper means to insure that a malodorant is applied to all gas that is destined for public consumption. He further concluded that Hunt, the manufacturer, was negligent in failing to properly odorize the gas sufficient to act as a warning agent; that Wanda, the wholesaler, was negligent in its failure to take appropriate steps to insure that malodorant was added to the gas which it owned and sold to Star Butane; and, that Star Butane, the retail distributor, was negligent in its failure to take affirmative steps to see that malodorant was being added to the gas purchased by it from Wanda at the Clear Creek Plant. The court next found that the failure to add malodorant or a sufficient amount thereof to the gas delivered to the Evans school constituted a cause in fact of plaintiffs' injuries. Accordingly, these three defendants were found solidarily liable with Hicks for the injuries sustained by both plaintiffs.

"The trial court found that although the manufacturer, wholesaler and distributor of LPG gas are not insurers against damage or injury, they are charged with a duty of exercising a high degree of care. The trial judge concluded that defendants did not under the circumstances of this case exercise the degree of care required. All State Insurance Co. v. Town of Ville Platte, 269 So.2d 298 (La. App. 3rd Cir.1972.)

"We discern no manifest error in the trial court's determination that the LPG supplied to the Evans school was unodorized or, in any event, under-odorized. Although the evidence in this regard is in conflict, we find a reasonable factual basis in the record to support the trial judge's conclusion...."
The effect of this ruling is that each of these parties, Wanda, Scoggins and Hunt, breached an affirmative duty to guard against and protect others from the inherent dangers ensuing from the public use of unodorized or underodorized gas. This duty of properly odorizing is specifically placed upon all manufacturers and distributors of liquified petroleum gas by the regulations of the Louisiana LPG Commission. Under these circumstances, Wanda, Scoggins and Hunt each breached the affirmative duty of properly odorizing the gas. The negligence of Wanda and Scoggins each emanates solely from their breach of the same duty that was owed by Hunt. For this reason Wanda's and Scoggins' claims for indemnity against Hunt on the ground of active/passive negligence is without merit.

*227 REDHIBITION AS A BASIS FOR INDEMNITY
Wanda and Scoggins claim the trial court erred in denying their third party demands in redhibition against Hunt. The appellants cite the second paragraph of LSA-C.C. art. 2531 as the basis of their recovery:
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect. (Amended by Acts 1974, No. 673 § 1.)"
To be successful in a redhibition action the appellants must prove a defect, its existence at the time of the purchase, the defect's non-apparent and unknown character, and the seller's refusal or inability to correct the defect when given the opportunity. Broussard v. Breaux, 412 So.2d 176 (La.App. 3rd Cir.1972), writ den., 416 So.2d 115 (La.1982); Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3rd Cir.1980); LSA-C.C. articles 2520, 2521, 2530, 2531.
An apparent defect is defined in the Civil Code as that which might have been discovered by simple inspection.[2] Wanda and Scoggins would have discovered improper odorization had they performed even a simple inspection, but their duty surpassed that of a simple inspection. They had, not only a duty to inspect, but they had an affirmative duty to discover the improper odorization and to remedy it.
Since Wanda's and Scoggins' affirmative duty of odorization is the same as that of Hunt's, it cannot be said that the lack of proper odorization was a "hidden defect" such as would make redhibition available to Wanda and Scoggins for indemnity from Hunt.
The trial judge correctly resolved this issue when he stated:
"Finally the plea of redhibition (C.C. Article 2545) must be rejected, because that claim presupposes a hidden defect. In this case, repetitious as this may be, it was incumbent under the law and under the regulations of the governing commission for Wanda and Star Butane to discover the inadequacy of the malodorant. They had a corresponding or equal responsibility."

WANDA'S CLAIM FOR INDEMNITY BY CONTRACT
Wanda contends that Hunt breached its contract with Wanda and that Wanda is entitled to indemnity under the provisions of LSA-C.C. art. 2769.[3] Wanda relies on the following provision of its contract with Hunt for its position:

"Seller warrants that goods sold or services furnished under this purchase order were produced in full and complete compliance with all applicable [laws] and regulations including, among others, the Fair Labor Standard Act as amended."

Wanda's position is without merit for the following reasons.
The Legislature specifically created the Louisiana LPG Commission[4] for the purpose of regulating the Liquified Petroleum Gas industry. It is well recognized that this industry handles a product that possesses dangerous propensities which require close regulation for the protection of the public consumers.
*228 The Commission, pursuant to its duties, has adopted detailed regulations which establish the standards which must be followed by all persons who manufacture, handle or distribute this ultrahazardous product.
These regulations include the requirement that all manufacturers and distributors of Liquified Petroleum Gas shall use the proper means to insure that the gas is properly odorized. In this case, Hunt, Wanda and Star Butane each had a separate duty to use the proper means to insure that the gas they handled was properly odorized.
By requiring the manufacturer (Hunt), the wholesaler (Wanda) and the retailer (Star Butane) to perform this vital and important duty, the Commission is, in effect, giving the consumer maximum protection against injury by requiring proper odorization at three different stages of the processing and delivery of the gas. This stringent Commission regulation, of requiring odorization at these three different levels, is an expression of public policy of protection for the consumer of this dangerous product.
It is Wanda's contention that the provision of the contract quoted herein releases Wanda from any duty to odorize the gas and further creates a basis for damages or indemnity by Hunt in favor of Wanda for a failure to odorize. If we were to agree with Wanda's contention we would be allowing Wanda to delegate the duty of odorization to Hunt by contract thereby reducing by contract the number of effective check points for odorization of the gas as it travels from the manufacturer to the consumer. To so lower the protection of the consumer of this ultrahazardous product would violate the express public policy of this state. To the extent that the contract between Wanda and Hunt attempts to negative such public policy, it is unenforceable,[5] and Wanda is entitled to no damages or indemnity from Hunt. The trial court correctly denied Wanda's claim for indemnity on this basis.
For these reasons the judgment of the trial court is affirmed. The costs of this appeal are to be paid one-half by Wanda Petroleum Company and one-half by Jesse Scoggins, d/b/a Star Butane Company.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I concur in the result reached by the majority opinion applicable to this case. Absent substantial distinction, I should think that we should reach the same result here as was reached in Kalmn, Inc., v. Empiregas Corp., 406 So.2d 276 (La.App. 3rd Cir.1981). In the Kalmn case a third party demand was granted under Article 2475 of the Civil Code.
However, the issue in the two cases before us do not appear to have been focused upon in Kalmn.
In support of the third party claims reference is made to the principle that a tort-feasor only technically or constructively at fault may recover from the party primarily responsible for the act that caused the damage. Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922). It has been held all along in the litigation flowing out of the explosion incident at Evans High School that Wanda and Scoggins were not at fault only technically or constructively. They were both guilty of fault in not making certain that the gas in question contained maloderant. This point does not appear to have been considered in Kalmn.
In Green v. Taca International Airlines, 304 So.2d 357 (La.1974) the respective duties of defendants in a high risk industry, *229 that of common carriers, were considered along with the right to recover indemnity. In that case the airline (TACA) made similar arguments as are made by Wanda and Scoggins. The Louisiana Supreme Court held TACA's fault constituted negligence which was a proximate cause of the accident in which Mrs. Green fell when she tripped on a hole in the concrete of the airport apron, a safety ground installation usually marked with yellow paint as a warning. "Thus, (said the Supreme Court) TACA cannot be said to have been constructively or technically at fault; its fault was active." TACA's third party claim against the New Orleans Aviation Board, which operated the airport was denied. I consider that the rule of the TACA case is applicable here. As noted above, this rule does not appear to have been given consideration in Kalmn.

Wanda argues that it should have indemnity under its written contract with Hunt in which Hunt warranted that the gas sold was "produced or furnished in full and complete compliance with all applicable laws and regulations ...".
In the TACA case the Louisiana Supreme Court said:
"Agreements have the effect of law between the parties, and the courts are bound to give effect to all such contracts according to the true intent of the parties. That intent is determined by the words of the contract when they are clear and explicit. La.Civil Code art. 1945 (1870). Additionally, a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. This rule is equally applicable whether the damage is caused by the sole negligence of the indemnitee or the concurrent negligence of the indemnitee and indemnitor.5 Thus, since the basis of the Aviation Board's liability to plaintiffs is its own negligence and not the negligence of TACA, no indemnity is due."
Therefore, unless Wanda's contract with Hunt expressed an unequivocable intent on the part of Hunt to indemnify Wanda in situations in which Wanda itself was guilty of negligence which was a cause in fact of the damage suffered, I am of the opinion that Wanda's written warranty would not cover the right of indemnification.
I agree with the trial court and the majority opinion that appellants may not rely on redhibition because the lack of maloderant in Hunt's gas was or must have been readily apparent upon the simplest inspection. Hence, LSA-C.C. art. 2521 bars the third party claims. However, Scoggins urges that it has a redhibition claim under the seller's rights over against a manufacturer provided in the second paragraph of LSA-C.C. art. 2531. As I understand it, this paragraph of the article was designed to give a right over in favor of sellers who have themselves been held liable in redhibitory actions. However, even if the provision is not so restrictive, I am of the position that the apparent nature of the defect of lack of odorization of the gas would bar Scoggins' redhibition claim.
NOTES
[1] Before trial was completed Scoggins and Pan American settled the claims against them and were released by the plaintiffs. The trial judge found Scoggins negligent along with Wanda and Hunt. Accordingly, the judgment of each plaintiff was reduced by one-fourth.
[2] LSA-C.C. art. 2521 provides:

"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
[3] LSA-C.C. art. 2769 provides:

"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract."
[4] LSA-R.S. 40:1841-40:1850.
[5] LSA-C.C. art. 11 provides:

"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
"But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."